IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

T.B., M.S., AND S.G.W.,

        Plaintiffs,

   v.

EUGENE SCHOOL DISTRICT,

        Defendant.
_____

Case No. 6:15-cv-01111-MC

ORDER

MCSHANE, Judge:

      Plaintiffs (student S.G.W. and parents T.B. and M.W.) bring this action challenging the ALJ's decision offsetting hours S.G.W. ("Student") spent at Center Point therapeutic school in the summer of 2014 against the total compensatory hours the parties agreed defendant Eugene School District owed Student.[1] At oral argument, I granted the motions to supplement the record. The determinative motion to supplement, ECF No. 36, was unopposed and concerned the document placing Student at Center Point before the summer in question. At oral argument, I denied plaintiffs' motion for sanctions for failing to turn over the placement document. I concluded there was no bad faith by the District in failing to turn over that document. Rather, it

---

[1] Plaintiffs also challenge the ALJ's findings regarding several dates the District admittedly did not provide Prior Written Notices (PWNs) to Student. The parties, however, stipulated to this issue before the ALJ. Additionally, as it is undisputed there were several PWN violations, any alleged errors are immaterial to the ALJ's ultimate decision.

1 –ORDER

is simply another example of the District's negligence in dealings with Student. Much of that negligence, such as denying Student a FAPE for two school years, was undisputed. The only relevant issue here is whether the hours Student spent at Center Point in the summer of 2014 were compensatory. Because the District placed Student at Center Point, and because no one ever suggested those hours were compensatory before the District made that argument to the ALJ, I conclude those hours were not compensatory and shall not be offset from the 570 hours the parties agree the District owes Student.

## BACKGROUND

As the parties are well aware of the factual background, I do not include all of the facts here. In September 2012, Student moved to Eugene from Ithaca, New York, and registered as a sophomore at South Eugene High School. Upon registration, Student's parents informed the District that Student had been diagnosed with autism and was recently hospitalized for depression after two suicide attempts. Student requested an evaluation for special education services. Student's requests were ignored for over a year, until her parents filed a complaint with the Oregon Department of Education (ODE) on December 6, 2013. The ODE ordered the District to formulate an Individualized Education Program (IEP) for Student. During two meetings in May 2014, the District formulated an IEP for Student. At that time, the IEP team also determined Student's placement. As discussed below, Center Point was Student's placement as of May 2014. During the summer of 2014, Student attended Center Point for 157 hours of specialized instruction.

There is no dispute that the District violated the Individuals with Disabilities Education Act (IDEA) in several ways. At times the violations were so egregious that plaintiffs felt the

District intentionally retaliated against them.[2] No purpose would be served by outlining the violations here. As noted, the only dispute in this litigation is the amount of compensatory hours Student should receive to place her in the position she would have been in had the District not denied her a free and appropriate public education (FAPE) from September 2012 to May 2014.

Before the ALJ, the parties agreed that the District owed Student 570 hours of specially designed instruction (SDI) to make up for the denial of a FAPE. The parties disputed whether the 570 hours should be reduced by: (1) the 23 days Student was ill before May 2014; and (2) 156 hours Student attended Center Point during the summer of 2014. The ALJ concluded Student's sick days were caused by the denial of a FAPE and should not be deducted. That conclusion is not challenged here. The ALJ also concluded the 156 hours at Center Point were compensatory hours and deducted those hours from the 570 hours. Importantly, the ALJ did not have the document with the Center Point placement for Student dating from May 2014. Despite the placement document being in Student's file for nearly two years during this litigation, the District apparently was unaware of its existence. In fact, the District learned of the document only after the plaintiffs found the document, more or less by chance.

## STANDARDS

IDEA appeals contain a unique standard of review known as "modified *de novo* review." *Ashland Sch. Dist. v. Parents of Student R.J.*, 585 F.Supp.2d 1208, 1211 (D. Or. 2008). The amount of deference due the ALJ's decision depends on the thoroughness of the ALJ's findings. *Id.* see also *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1494 (9th Cir. 1994). The

---

[2] The ALJ found against plaintiffs on that claim and plaintiffs do not challenge that finding. Upon reviewing the record, including three full days of testimony before the ALJ, it is clear that while the District was negligent in serving Student, it never intentionally retaliated against plaintiffs.

3 –ORDER

party challenging the ALJ's decision bears the burden of proof. *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1127 (9th Cir. 2003).

## DISCUSSION

It is clear that had the ALJ known Student actually received a placement for Center Point in May 2014, she would have concluded those hours should not be offset from the stipulated hours agreed upon by the parties.[3] The District relied heavily on the fact that there was no official placement for Student at Center Point. That argument clearly persuaded the ALJ to conclude the Center Point hours were in fact compensatory.

Despite three full days of testimony before the ALJ, little of that time focused on Center Point and whether those hours were compensatory.[4] The parties submitted post-hearing briefs before the ALJ issued findings and conclusions. Out of 35 pages or so of briefing, plaintiffs dedicated less-than one page to the Center Point hours at issue. Plaintiffs argued:

> The District has stipulated to the Parent's proposal of 570 hours of specialized services in math, social skills, organizational skills, and transition training. However, the District also claims that number should be decreased due to certain factors. It is hence now the District's burden to prove that the Student is not due the entire compensatory award of 570 hours.
>
> The District claimed during testimony that it had already provided Student with 152 hours of compensatory education with the Student's placement at the Center Point School from June 23, 2014 to August 15, 2014. The Parents disagree. The District offered the placement as part of Student's current services, after the IEP team determined that given the extremely poor mental state of the Student at the time of the drafting of the IEP, Student would likely not be able to access Extended Service Year (ESY). Student's time at the Center Point School was purely therapeutic, and provided no academic credit or educational benefit. The

---

[3] The parties disagreed over who bore the burden of proof as to the issue of offset hours. While this is an interesting legal question, it is ultimately immaterial as the outcome here does not depend on whether the offset was actually an affirmative defense or not. Regardless of the burden of proof, the equities here do not allow for the offset of any of the Center Point hours.

[4] Some confusion stemmed from a disagreement over whether there was in fact an agreement upon the Center Point hours. In fact, the parties never settled that issue but the confusion spilled into the testimony (and objections) for several witnesses.

4 –ORDER

> goal of the placement was to stabilize the Student to the point where she could access the proposed educational placement at the Wellsprings Friends School in the fall of 2014. When questioned during the due process hearing as to whether the IEP team discussed whether Center Point should be used for compensatory education, IEP team member Ms. Clark stated, "I don't believe there was any conversation about compensatory education at that point."
>
> Parents assert that the placement at Center Point should be viewed strictly as services provided under the May 2014 IEP. The District's own witness, Ms. Ray, testified that she and other staff at Center Point worked directly from the Student's May 2014 IEP. The District failed to provide sufficient justification for why the placement at Center Point, in the midst of Student's 2014-2015 IEP year, instead should be regarded as compensatory education for the 2012-2013 and 2013-2014 school years.

Parents' Post-Hearing Memo. 37-38 (internal citations omitted).

The District's argument on this issue focused on the lack of an official placement. After a flippant comment regarding an obvious scrivener's error in plaintiffs' brief, the District began its post-hearing argument by stating:

> The time spent at Center Point was above and beyond what was required on the Student's IEP. As indicated on the Student's IEP, the Student was not entitled to extended school year services ("ESY"). Similarly, the IEP team (including the Parents) never changed the placement on the Student's IEP to Center Point. Therefore, the District was under no obligation to provide any of that time to Student.

District's Posthearing Br. 26.

Clearly, the lack of an official placement carried great weight with the ALJ, who began her findings and conclusions on this issue by noting:

> [A]s to the Student's time at the therapeutic school, I find that the District is entitled to offset hours for the services and instruction Student received during the summer quarter of 2014. Despite the Parents' contention, the evidence fails to demonstrate that Student's attendance at the therapeutic school was supplemental to and/or required by Student's May 2014 IEP. That IEP did not require ESY services nor did it direct placement at the therapeutic school.

ALJ's Final Order, 20.

5 –ORDER

The lack of an official "placement" for Student at Center Point was the basis of the finding that those hours were compensatory. The District led off with that argument and the ALJ began with that conclusion. But we now know there was an official placement directing Student to Center Point in May 2014.

Perhaps recognizing that Student's Center Point placement in fact changes everything, the District argues that: (1) it is unclear if the May 2014 placement could only apply to Center Point; and (2) because Student did not qualify for ESY, the summer hours from Center Point must be compensatory. Both arguments are meritless.

As plaintiffs point out in their reply to their motion for sanctions, ECF No. 44, the codes and descriptions on the placement refer to Center Point (and not to any other school in the District). Federal regulations mandate numbering schools from 30-39 based on the level of specialized instruction. Student's placement code was for a "Private separate school." ECF No. 36-1, 1. A "Private separate school" corresponds with a placement code of 35. The District's own placement information spreadsheet confirms that Center Point is the only program in the District designated "35." ECF No. 44-7, Ex. 6, 1. The fact that Center Point is the only code 35 designation demonstrates conclusively that Center Point was the only possible placement for Student. Contrary to the District's argument, there is no confusion; Student's May 2014 IEP directed placement at Center Point.

Further reinforcing this conclusion is Center Point's spreadsheet description. The District's spreadsheet contains a description for certain schools. The sheet describes Center Point as a "Secondary level year-round therapeutic day-treatment setting for only students who have Special Education Services." ECF No. 44-6, Ex. 6, 1. This description aligns with the description on Student's actual placement document, which describes the placement as a "Private therapeutic

6 –ORDER

program for only students with disabilities in a separate school." ECF No. 36-1, 2. There is no longer any doubt that Center Point was in fact Student's placement as of May 2014 and that Center Point was the placement that "best meets [Student's] needs at this time." ECF No. 36-1, 2.

After the revelation of Center Point as Student's official placement, Cheryl Linder, the District's Director of Educational Support Services, submitting a declaration stating:

> It is my understanding that [] the May 2014 placement determination page was filled out in order to memorialize the offer the District was making to provide additional time at Center Point over the summer months, even though the Student did not qualify for ESY services. Rather than filling the placement determination page out because Center Point was agreed upon as the educational placement, the placement determination was filled out because the IEP team knew that the Student would be spending some time there over the summer months.

Linder Decl. ECF No. 43-2, ¶ 5.

Rather than helping the District, Linder's declaration merely reinforces how inequitable it would be to subtract the Center Point hours from the hours the parties agree the District owes Student. Linder's declaration demonstrates the level of confusion in the District's dealings with Student. Despite misunderstanding the purpose of a placement determination, the District now appears to argue the placement document does not state what it clearly states. And while the legal import of the placement document resolves this case, the equities also lie with plaintiffs.

Chris Stover, the District's autism consultant, testified that the District offered Student Center Point over the summer, tr. vol. III, 127-28, and Stover did not recall any discussion at that time about compensatory education, tr. vol. III, 129. Katherine Clark, the District's Education Administrator in Education Service Department, a member of Student's IEP team who attended the May 12, 2014 meeting, testified that she was the one who suggested Center Point. Tr. vol. II,

161-62. Clark stated they did not have regression data to support ESY[5], "but we want to do something to get her started and settled, we don't really know her academically, we don't really know what she can do, what's available in the summer." Tr. vol. II, 162. Clark suggested Center Point as a way "to stabilize her." Tr. vol. II, 162. No mention was made of academics because Student did not need academic help at that time. Clark testified, "I realize we are not saying that she needs this level of service the rest of her life or anything, but – but what if we had her go [to Center Point] for the summer and see if she gets stabilized and okay, and then – and then we look at moving forward with Wellsprings." Tr. vol. II, 163. Clark agreed with the other witnesses present at the May 2014 meetings and did not "believe there was any conversation about compensatory education at that point." Tr. vol. II, 164.

Everyone appears to agree that Center Point over the summer was necessary for Student to have even a chance at succeeding at Wellsprings in Fall 2014. Cheryl Linder testified that Center Point was intended to stabilize Student:

> The – the IEP team in May [2014] did not indicate that the Student needed ESY; however, the District felt that to move the Student forward, that a stabilization period would be beneficial to her, and the Center Point day treatment program provided specifically supports in the area of mental health supports, social and behavioral supports.

Tr. vol. I, 49.

Despite offering Center Point as Student's official placement that summer, despite recognizing Student needed Center Point over the summer to stabilize, and despite never mentioning compensatory education until a year after plaintiffs accepted that placement offer, the District now wants to go back and subtract those hours by arguing Center Point was above and beyond what it owed Student. I disagree. All of the equities here lie with plaintiffs.

---

[5] I note the possibility that the District's own failings with Student may in fact be the reason it lacked regression data to support ESY and did not know what Student was capable of academically.

The District next argues that the summer hours must be compensatory because Student did not qualify for ESY. As plaintiffs point out though, Center Point is a year-round school so Student would not need ESY to attend. Center Point's summer program was not a special summer program, it was simply one part of Center Point's year-round program. And while the District now argues that Center Point must be compensatory because Student did not receive academic instruction there, Student's IEP team in fact considered a placement with "Exposure to regular education curriculum" in May 2014 but rejected that placement because it did not meet Student's needs at that time. ECF No. 36-1, 2.

At some point, the District is responsible for its own negligence. This negligence denied Student a FAPE for two school years and caused great confusion in implementing Student's IEP. This negligence also resulted in the District never turning over the official placement determination to plaintiffs. Had the District's attorneys been aware of that document, and had the District spent more time searching Student's IEP file and less time arguing to offset hours, we would not be here today. The official Center Point placement, combined with the fact that no one discussed Center Point as being "compensatory" until one year after plaintiffs accepted that placement, removes any doubt: the District may not offset the Center Point hours from the 570 hours it admits owing Student. As to that finding, the decision of the ALJ is REVERSED.

IT IS SO ORDERED.

DATED this 29th day of March, 2016.

                                                _____/s/ Michael J. McShane___
                                                        Michael McShane
                                                 United States District Judge