IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

T.B., M.S., and S.G.W.,

        Plaintiffs,

        v.

EUGENE SCHOOL DISTRICT,

        Defendant.



Case No. 6:15-cv-01111-MC

ORDER

MCSHANE, Judge:

Following my opinion reversing in part the Administrative Law Judge's final decision in this action under the Individuals with Disabilities Education Act (IDEA), plaintiffs move for an award of $119,002.50 in fees and $3,280.64 in costs. Defendant Eugene School District (the "District") opposes the motion, apparently asking this Court to deny it outright. That I am now forced to resolve this dispute over fees is unfortunate, but not surprising. The parties should have resolved this dispute long ago. Neither party is innocent.

1 – OPINION AND ORDER

While it is clear that plaintiffs, as the prevailing party, are entitled to reasonable fees, equally clear is that the requested fees are unreasonable. The only question remaining is determining what amount of fees plaintiffs reasonably incurred in bringing their successful claims. This question is easier asked than answered. Determining a reasonable fee award here is a difficult task, blurred by the fact that the plaintiffs appear to have refused to settle or even discuss the claims with the District at all before appearing before the ALJ. Upon arriving at the hearing, plaintiffs were apparently surprised by the fact that the District stipulated to most of plaintiffs' claims. Adding further to the confusion is the fact that plaintiffs did not prevail on their retaliation and harassment claims. With neither party budging, I am left to wade through the voluminous transcripts, briefs, and time records. Both parties are likely to be disappointed in this ruling, yet here we are.

## STANDARD

The Ninth Circuit applies the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

## DISCUSSION

The Court may award reasonable attorney fees in an IDEA action "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). Any fees awarded are based on the community rate "for the kind and quality of services furnished." 1415(i)(3)(C).

2 – OPINION AND ORDER

In determining the reasonableness of the fees and whether plaintiff was a "prevailing party," courts look to the Supreme Court's decision in *Hensley v. Eckerhart. Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1118-19 (9th Cir. 2006). As relevant here, awards of fees under the IDEA are generally analogous to awards of fees under other Congressional fee-shifting provisions such as 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964. *Id.* at 1118. The main difference appears to be in determining whether to enhance or reduce the lodestar figure. Ordinarily, the court decides whether to enhance or reduce the lodestar figure by evaluating a set of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The IDEA, however, expressly states that "no bonus or multiplier may be used in calculating the fees awarded under this subsection." § 1415(i)(3)(C). I conclude the appropriate fee here is simply the reasonable hourly rate multiplied by the reasonable number of hours spent. *See id.* (balance between attracting qualified counsel for civil rights cases and windfall for attorney is fee award "at the prevailing rate in the community for similar work; no more, no less.").

Plaintiffs request a fee of $225 per hour. Contrary to the declarations of plaintiffs' experts, $225 per hour is not a reasonable fee for the type of services provided in this action. Courts apply prevailing community market rates for purposes of § IDEA fee determinations. § 1415(i)(3)(C). Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Blum v. Stenson,* 465 U.S. 886, 897 (1984). Accordingly, this District uses the Oregon State Bar 2012 Economic Survey as the initial benchmark when reviewing fee petitions.[1]

---

[1] The economic survey is available at
https://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf.

At the time of the hearing before the ALJ, plaintiffs' attorney had just under three years of experience. The average billing rate for attorneys with 0-3 years of experience in the community is $128. The median rate is $150 per hour, the 25th percentile is $113 per hour, and the 75th percentile is $175 per hour. *See* Oregon State Bar 2012 Economic Survey, 29. That plaintiffs' requested hourly rate is inflated is confirmed simply by turning to the declarations of plaintiffs' fee petition experts.

One expert has 20 years of nearly exclusive practice representing students in IDEA cases. Wiscarson Decl., ¶ 5. This attorney, an "active and frequent presenter in the field of special education law," currently charges $225 per hour. *Id.* The other expert has 25 years of experience, 22 of which are dedicated to representing students in IDEA cases. This attorney charges $280 per hour. Broadhurst Decl., ¶ 6.

In contrast, this was plaintiffs' attorney's first IDEA due process hearing. While plaintiffs' attorney obtained satisfactory results, the hours spent obtaining that result do not correspond with the steep hourly rate sought. Attorneys with 20 years of IDEA experience would not spend over 32 hours attempting to essentially bifurcate the attorney fee issue into two separate issues: one upon filing dealing solely with fees at the administrative level only to come back and deal with the fees incurred on the appeal at a later date.[2] I agree with the District that plaintiffs are attempting to double dip by charging an hourly rate higher than one's experience allows, yet spending the excess hours a less-experienced attorney needs to accomplish similar tasks. I do not mean to denigrate plaintiff's attorney. Her work is appreciated in the community and by this court. Instead, I merely point out that there is a reason more experienced attorneys

---

[2] This is but one example. The record is ripe with others. Nearly everything took longer than what one would expect from an attorney billing $225 per hour.

command a higher hourly wage. Here, plaintiff's attorney incurred hours one would expect from an attorney with less-than three years of experience working on her first IDEA due process hearing. Considering the above average results plaintiffs obtained, I conclude plaintiffs' attorney is entitled to $160 per hour, slightly above the median hourly rate in the community.

I next must consider the hours reasonably spent on this action. As indicated above, the hours spent are more than one would expect from an attorney with 20 years of IDEA experience. An hourly rate of $160 reflects that. But that does not end the inquiry. Like all other Circuits to consider the issue, the Ninth Circuit applies *Hensley's* "degree of success" standard in IDEA cases. *Id.* at 1121. In discussing this standard, *Aguirre* contains language useful here:

> The *Hensley* standard will help deter submission of multiple, nonmeritorious claims. It is understandable that without cost considerations, parents facing litigation would bring as many claims as possible, hoping to secure a larger share of the district's resources—whether in the form of reimbursements, additional staff time, or educational technology—than would be otherwise allotted to their children. Lawyers may also have incentive to bring baseless claims in order to increase billable hours devoted to a case. Acquiring a client with one strong claim should not give special education attorneys the green light to bill time on every conceivable issue. All children suffer when the schools' coffers are diminished on account of expensive, needless litigation. In order to balance the needs of IDEA claimants and school districts, *Hensley* offers parents and their lawyers an incentive to avoid making frivolous claims while preserving their ability to raise meritorious claims.

461 F.3d at 1120.

Pre-hearing stipulations informed the ALJ of the sole remaining issues in dispute: (1) what compensatory education is appropriate; (2) whether Student's 23 days of absence a manifestation of her disability or the result of physical illness; and (3) whether the District retaliated or harassed Student and, if so, what is an appropriate remedy. Transmittal of Entire Record and Transcript, Ex. 11, 203. Plaintiffs did not prevail on their retaliation and harassment claims. As I noted in my opinion reversing in part the ALJ's decision on the Center Point hours,

5 – OPINION AND ORDER

while the District was negligent, none of its actions were intentional. March 29, 2016 Opinion, 3 n.2. Considering the District's actions in dealing with the plaintiffs, the retaliation and harassment claims were by no means frivolous. That said, those claims took up much of the briefings and hearing time below and plaintiffs are not necessarily entitled to recover for time spent pursuing those claims.

In determining the reasonable hours spent in this matter, I reviewed the entire record below. That record reveals much confusion amongst the parties and the ALJ regarding what claims and relief plaintiffs continued to pursue. Much of the confusion stems from an apparent refusal to communicate regarding stipulations, concessions, and actual relief sought. Neither party was innocent. Although the District attempted to settle this matter, its earlier dealings with plaintiffs clearly led to a breakdown of trust on plaintiffs' side. This becomes readily apparent upon reading the transcript. Further complicating matters is the fact—and this fact too is clear when reviewing the transcript—that Student's mother, who has a law degree, was more than a passive observer at the hearing. In fact, Student's mother at times appeared to act as lead counsel, even arguing case law before the ALJ. While I am not surprised that any mother, attorney or not, would be actively involved when a school district essentially turns a blind eye to her daughter's disabilities, it does make the determination of a reasonable award under these particular circumstances more difficult. One certainly gets the impression this case should have settled at or before the hearing. I emphasize again that neither party is innocent.

In 2014, the District offered to mediate this matter. Tr. Nov. 14, 2014, 29. Plaintiffs rejected that offer. In November 2014, just after plaintiffs requested a hearing, the District presented plaintiffs with a settlement offer. Tr. Nov. 14, 2014, 10. Plaintiffs acknowledged receiving the offer but did not expressly reject the offer or even alert the District to what part of

6 – OPINION AND ORDER

the settlement offer was unacceptable. Def. Resp., 2 n.1; ECF No. 51, 2. In November 2014, the

plaintiffs acknowledged that the compensatory hour issue was a critical issue. Tr. Nov. 14, 2014,

14. Before the hearing, however, the District stipulated to owing the student the great majority of

the compensatory hours sought. Other than the 157 hours at issue on this appeal, and 23 sick

days, the critical compensatory hour issue was resolved before the administrative hearing even

began.

      At the January 22, 2015 pre-hearing, the parties met with the ALJ to discuss the

remaining issue. The ALJ noted that "It strikes me that—that there has not been a lot of

communication between the parties at this point . . . ." Tr. January 22, 2015, 5. Upon reading the

record, that much is clear. The District filed a pre-hearing motion to limit evidence, arguing that

due to the District's concessions, nearly all of plaintiffs' claims were moot. Transmittal of Entire

Record and Transcript, Ex. 14. This motion again alerted the ALJ to the fact that plaintiffs failed

to respond in any meaningful way to the repeated offers of settlement. Transmittal of Entire

Record and Transcript, 225-26. The motion also notified the ALJ of the District's to-date

unsuccessful attempts to streamline the hearing by way of pre-hearing stipulations. *Id.* at 226-27.

Plaintiffs opposed the motion, arguing in part that the District still had not admitted denying

Student a Free Appropriate Public Education (FAPE). Transmittal of Entire Record and

Transcript, Ex. 10. The District and the ALJ were confused by plaintiffs' opposition, noting that

the District's offer of compensatory education was essentially a stipulation that it denied Student

a FAPE. To resolve any confusion, stemming not only by the failure of the parties to

communicate but also by the fact that this IDEA hearing was plaintiffs' counsel's first, the

District submitted pre-hearing stipulations. Ex. 11. As noted above, these stipulations informed

the court (and plaintiffs) that the remaining issues in dispute were: (1) what compensatory

7 – OPINION AND ORDER

education is appropriate; (2) whether Student's 23 days of absence a manifestation of her

disability or the result of physical illness; and (3) whether the District retaliated or harassed

Student and, if so, what is an appropriate remedy. Transmittal of Entire Record and Transcript,

Ex. 11, 203.

In determining the reasonableness of the fee request, "the most critical factor is the

degree of success obtained." *Hensley*, 41 U.S. at 436. While plaintiffs ultimately obtained most

of the relief they sought, they did not prevail on the retaliation and harassment claims. Those

claims took up much of the time and briefings below. In that sense, plaintiffs achieved only

partial or limited success. Especially with a case like this, there is no precise mathematical

formula for determining the reasonableness of the fee award. *Id.*

Considering how close the parties were on most of the issues, it is clear that the

retaliation and harassment claims resulted in many additional hours spent by the parties and the

ALJ. At the January 22, 2015 pre-trial hearing, Ms. Hungerford again alerted the ALJ to

plaintiffs' refusal to even discuss the remaining issues:

> I just would like to register my dismay that we're heading into a process in which
> hours of your time, judge, will be involved, as well as hours of expense of
> attorney time for both these parties, when there is so apparently not that great a
> difference.
>
> And I would certainly like to receive from the parents a point by point response to
> the District's offer, because the District may very well be willing to reformulate
> its offer, and to answer points of objections. But we cannot guess as to which
> parts of the offer are inadequate.
>
> And I think that's a reasonable expectation at this point. But it's certainly one that
> I believe if we go to hearing, spend five days on it, that if there's certain remedies
> ordered to the parents, that's going to be considered in the awarding of any
> attorneys fees. And that is a major concern here to me.

Transcript, Pre-Hearing, 31-32.

8 – OPINION AND ORDER

Once again, the ALJ suggested that plaintiffs communicate with the District and inform everyone of what remains in dispute as well as the specific shortcomings of the District's offers. *Id*. at 32. Plaintiffs ignored the comments and moved on with a question about the scheduling of witnesses. Plaintiffs' distrust of the District's competence and intent to follow the IDEA as to Student, while not unearned, led to a failure to discuss or settle this matter. The retaliation claim was only one part of plaintiffs' case that had to be litigated. Another was confusion (and distrust) regarding who would control the compensatory education piece of the remedy.

On the third day of the hearing, the ALJ remained confused about what exactly the parents were requesting:

> I think part of the problem here is that it's not – it's not clear to me, and I'm going to have to decide this, what exactly the Parents want that is different from what the District is offering. . . . So once we can identify what it is that the Parents want that is sort of different from what the District has already offered, we can go forward, but we are sort of dancing around things and not getting to the main points in contention, I think. . . . But I think that we are – I mean, I know I'm speaking for me. I'm sort of at a loss here because I'm, I don't – I don't yet appreciate the differences between what Parents want and what the District has offered so . . . . it would be helpful if you did discuss this and, Ms. Wischerath, you could sort of articulate what it is that's – that's, you know, what the Parents want so that we can sort of work from there because part of this may be just a failure to communicate, and if that's the case, then we don't need to have a hearing about it if we can, you know, reach – if we can kind of get on the same page with out communication.

Tr., Vol. III, 30-33.

After a brief recess, plaintiffs explained, apparently for the first time, the specific relief they sought. Tr. Vol. III, 33-53. In addition to the earned distrust from plaintiffs, plaintiffs' attorney's inexperience in IDEA cases led to some extra hours and confusion during the hearing. As discussed above, the extra time required is balanced by the lower hourly rate of $160.

9 – OPINION AND ORDER

Following multiple readings of the briefs and transcripts below, I conclude the harassment and retaliation claims are somewhat intertwined with the claims plaintiffs prevailed upon. While the hearing would have been shorter absent those claims, the background testimony was largely relevant to issues on which plaintiffs had the burden of proof. Specifically, testimony regarding alleged retaliation was related to the compensatory education issue, which required testimony of where Student was before being denied a FAPE, and where Student was at the time of the hearing. In making this determination, I note that plaintiffs generally are not seeking compensation for time spent on the retaliation and harassment claims. ECF No. 4, 3. While the District points to some briefing and witness preparation time that could be viewed as relating solely to the retaliation claims, I conclude plaintiffs' overall success justifies inclusion of those hours here. *See Hensley*, 461 U.S. at 435-36. Had plaintiffs not already deducted many hours spent pursuing unsuccessful claims, my conclusion may well be different.

I also conclude plaintiffs' refusal to respond to the District's settlement offers, as discussed above, led to unnecessary time spent on this matter. Good-faith negotiations and conferral before the hearing would have streamlined the process. However, some issues in this matter simply had to be litigated. I conclude the failure to discuss the issues before the hearing justifies a 10% reduction in plaintiffs' award. I find the 10% reduction fairly balances plaintiffs' attorney's inexperience, which she is not penalized for, against the unnecessary hours incurred due to a failure to meaningfully discuss the issues before appearing in front of the ALJ.

An award of $160 per hour for 528.9 hours equals $84,624.00. Deducting 10% of that award leads to a reasonable fee award, considering all of the circumstances, of $76,161.60. Plaintiffs are entitled to costs of $2,944.64. I deny plaintiffs' request for an award of

10 – OPINION AND ORDER

prejudgment interest. *See J.O. v. Tacoma Sch. Dist.*, 2015 WL 59389 at *2 (W.D. Wa. Jan 25, 2015).

IT IS SO ORDERED.

DATED this 21st day of July, 2016.

/s/ Michael J. McShane
Michael McShane
United States District Judge